STEVE POTYOK, PLAINTIFF, v. JOLAN POTYOK, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided June 16, 1954.

*Mr. Arthur Reich,* attorney for plaintiff.

*Mr. Russell Fleming,* attorney for defendant.

NIMMO, J. S. C.   This matter comes before the court on an order to show cause why a final judgment for divorce dated May 25, 1953, should not be vacated and set aside.   The ground for the motion to vacate is that the defendant had no opportunity to enter a defense to the suit as she was living in Hungary which it is alleged is behind the so-called "iron curtain."

The original complaint was filed by plaintiff September 11, 1952, and an amended complaint was filed September 29, 1952, apparently to include an allegation that no previous proceedings were had between the parties respecting the marriage, its dissolution or the support and maintenance of the wife and child.   The file of the case shows that it proceeded in the usual way where there is an absent defendant. The clerk of the court approved the case for trial on February 4, 1953; a trial was had as an uncontested matter and a judgment *nisi* was entered in favor of the plaintiff on February 24, 1953.   Thereafter, in the usual manner a final judgment was entered on May 25, 1953, and it is this judgment defendant seeks to have set aside.   It should be noted that while the complaint sets forth that a child was born of the marriage, then four years of age and in the custody of defendant, the judgment *nisi,* as well as the final judgment, is silent as to custody or support of the child.

The defendant admits she left the United States with her child, then two months old, in October 1948.   The version of how and why defendant came to leave this country for

Hungary differs. Plaintiff's version is that his wife left of her own accord against his wishes, and defendant claims she was duped into leaving on the promise her husband would join her in three months. In any event, defendant did go to that part of Hungary where her sister resided. It must be kept in mind that this was in October or November of 1948. Defendant claims she never received anything from her husband, the plaintiff, while he claims to have sent her at least $400 and packages of food and clothing and that defendant wrote him she was going to stay there, and if he came to get her she would have him picked up as she was a Communist and had changed the name of the child and herself to "Major," and had given up her marriage name of "Potyok." In the spring of 1950 plaintiff claims to have bought a return ticket for his wife and child from an agent of the Cunard Steamship Company and requested defendant to contact the steamship company's office in Budapest. In July 1952, the tickets not being used by defendant, the company returned the money therefor to plaintiff.

Suit for divorce was commenced in September of 1952. Defendant admits receiving the copy of the divorce complaint and the order of publication on November 10, 1952. She claims to have consulted the American Consul at Budapest and further claims he told her there was nothing she could do. Defendant was in correspondence with her two brothers, who live in Middlesex County and who from all accounts are successful family men. It must be noted that the published notice of the pending divorce suit appeared in *The Daily Home News* and the *New Brunswick Spokesman* for the prescribed number of times. Both newspapers have a circulation in the area where the parties resided, as well as the defendant's two brothers.

After the judgment of divorce became final on May 25, 1953, and on June 6, 1953, plaintiff remarried.

The dates in this matter are significant. Defendant left this country for Hungary in October 1948. In 1950 plaintiff purchased tickets for her return which, not being used, the

money therefor was returned to plaintiff in July 1952. Defendant admits receiving copies of the complaint and notice of publication on November 10, 1953. On February 16, 1953 a hearing was had on the complaint for divorce, almost three months after defendant acknowledges she had notice thereof. After the judgment *nisi* was entered on February 24, 1953, the statutory three months elapsed when the final judgment was entered on May 25, 1953. On June 6, 1953 plaintiff, relying on the final judgment, remarried another woman. On April 20, 1954 defendant came back to this country and thereafter an order to show cause was made to vacate the final judgment.

If we are to have a stable society, judgments of courts must have stability. *Rule* 4:62–2 amply sets forth the grounds upon which a final judgment may be vacated. This court finds no fraud in obtaining the judgment under attack. Defendant had every opportunity to make known her desire to contest the action. The very object of publication and service of papers, such as we find here, is to give a defendant such opportunity. It is well known that a mere letter to the court from the defendant, or anyone in her behalf, would have halted matters to give defendant an opportunity to be heard.

The cases cited by defendant have to do with fraud and surprise, neither of which appear in the instant case. Defendant relies on *Plodzien v. Plodzien*, 121 *N. J. Eq.* 270 (*E. & A.* 1937). However, in that case the wife was a native of Poland, while in the instant case now under consideration the wife is a native of the United States, having been born in Wheeling, West Virginia, on September 13, 1925, as stated in her affidavit. Defendant filed two memoranda, one as above stated and the other dealing with allowance of counsel fees.

The case of *Shammas v. Shammas*, 9 *N. J.* 321 (1952), wherein Mr. Justice Brennan held,

"Innocent persons should not be involved in an intolerable situation. That one or both of the divorced parties have remarried is an

238

important and frequently a determining factor, particularly where the decree, as here, is not wholly void but merely voidable."

is applicable to the instant case.

■ Motion to vacate the final judgment as to the divorce is denied for the foregoing reasons.

■ As herein above noted the judgment *nisi* and the final judgment are silent as to the support of the child. Inasmuch as the order to show cause asks for such support and plaintiff admits child is his in his original and amended complaint, an order for support of the said child will be entered in the sum of $15 per week payable through the Chief Probation Officer of Middlesex County, beginning May 6, 1954, and the attorney for the defendant will be allowed a counsel fee of $75 on this application.